**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: ELMIRON (PENTOSAN POLYSULFATE SODIUM) PRODUCTS LIABILITY LITIGATION | : : : | Case No. 2:20-md-02973 (BRM)(ESK) MDL No. 2973 |
| | : | |
| THIS DOCUMENT RELATES TO: ALL CASES | : : : : | JUDGE BRIAN R. MARTINOTTI JUDGE EDWARD S. KIEL |
| | : | |

**PLAINTIFFS' RESPONSE TO THE OBJECTIONS OF PARKER WAICHMAN LLP TO
PLAINTIFFS' MOTION TO AMEND CASE MANAGEMENT ORDER NO. 15
(Establishing Common Benefit Fees and Expense Funds)**

## I.      INTRODUCTION

Plaintiffs, through Co-Lead Counsel, state as follows in response to the *sole* objection made by Parker Waichman LLP ("Parker Waichman") to their request that this Court establish a 9% Common Benefit Work Holdback percentage.[1]

Parker Waichman objects to the proposed Work Holdback percentage because it claims that the proposed percentage is too high and unreasonable.  Not so.  As discussed below, the proposed Work Holdback is eminently reasonable considering the facts and circumstances of *this MDL* – the touchstone for determining the appropriateness of a holdback.

One of the strongest indicators of the reasonableness of a proposed Work Holdback is support from Plaintiff leadership.  Here, the proposed Work Holdback has the *unanimous* support of Co-Lead Counsel[2] and the *near unanimous* support of the Plaintiff Executive Committee

---

[1] Parker Waichman does not object to the Plaintiffs' request that this Court establish a 2% Common Benefit Cost Holdback percentage.

[2] The lead counsel structure consisting of three co-leads is designed to allow for situations where lead counsel may differ as to how to proceed with a litigation.  By having three co-lead counsel, an equitable system is created whereby "majority rules" and a MDL may proceed in a manner

("PEC").[3]  Notably, Parker Waichman does not address this compelling point or why its objection

should trump the consensus of Co-Lead Counsel and near consensus of the PEC. The views of

Co-lead Counsel and the broader PEC are important because they are tasked with operating with

one voice—even where decisions are not unanimous. Here, based on the extensive common

benefit work done by the 26 member PSC, the size of this litigation and the alignment of the

proposed Holdback with percentages adopted in similar litigations, 10 out of 11 members of this

group have voiced their support for the proposed Holdback. Parker Waichman's lone opposition

to the proposal should not be permitted to overrule the unanimous Co-Lead Counsel view and the

majority PEC view of the amount needed to fairly compensate the PSC for their diligent work.[4]

_____

where one co-lead counsel disagrees so long as there is support from the other two co-lead counsel.
To this end, the fact that the proposal here was unanimously agreed upon by all three co-lead
counsel is compelling.

[3] Similar to co-lead counsel, the PEC structure is designed to allow for the "majority rules"
approach.  Here, there was more than simply a majority rule.  All PEC attorneys, except for one,
agreed with the proposed Work Holdback.

[4] Co-Lead counsel Paul Pennock had multiple conversations with PEC member Melanie
Muhlstock of Parker & Waichman, as well as Jerrold Parker, one of its founding partners.  The
talks were, as they should be, between friends and colleagues in litigation: a non-acrimonious
airing of issues and debating them. Cumulatively, these conversations were hours long, but they
never reached the point where it appeared Melanie Muhlstock or Parker Waichman would agree
with the 11 firms that approved the 9% Common Benefit Work Holdback percentage.  Towards
the end of this series of calls, a request was made by Parker Waichman to have a call, unrelated to
the assessment application, so that its attorneys could ask questions about work that might remain
to be completed and what comprised the trial-ready materials.  Parker Waichman indicated that
they would clear their calendars for any time that the several other lawyers needed for that call
could make themselves available.  Setting this call did not seem exigent because it related to
conducting new discovery and trial preparations, not the assessment, and *a stay of the first
Bellwether action had just been entered*. There is no question that a call, or even an in-person
meeting, about the issues of conducting any additional discovery as well as trial preparation issues
can occur.  However, the time-frame between the meeting request being made and the filing of the
instant motion did not allow for scheduling.  It should be pointed out that the entire PEC, including
Melanie Muhlstock of Parker Waichman, and the remainder of the PSC, are knowledgeable of the
massive work product that occurred and what exists. Nothing has been withheld from anyone nor
would there be any sensible reason to withhold work product.  Quite the opposite is true.  The

A 9% percent Work Holdback percentage is reasonable for *this MDL* in light of the common benefit work completed to date and the size of the MDL, the standard used by courts to assess reasonableness. Indeed, Parker Waichman's objection acknowledges "that significant work was done by the PSC in this MDL." Nonetheless, it challenges the proposed Holdback because it claims that such work was not enough to warrant the requested Holdback. But besides stating that general discovery and trial work remain to be completed, the objection does not identify what work remains to be done. As detailed in its motion, the PSC undertook significant heavy lifting, including robust discovery, the preparation of a large opposition to summary judgment and supporting filings, and numerous trial-related filings. Such common benefit work is incalculably vital to the litigation and is commensurate with the proposed 9% Work Holdback.

Parker Waichman likewise fails to consider the role that the size of the litigation plays in determining an appropriate percentage. In a litigation with what is estimated to consist of 2,000 viable claims or less, a higher percentage is reasonable to compensate counsel who comprehensively and expeditiously advanced the litigation.

Accordingly, the Court should overrule Parker Waichman's objection.

## II.    ARGUMENT

### A.    THE HOLDBACK PERCENTAGE OF 9% SOUGHT BY THE PLAINTIFFS IS REASONABLE BASED UPON FACTS SPECIFIC TO THIS MDL

Common benefit holdback percentages are entered in almost every MDL, and the purpose of a common benefit fund is "to ensure that attorneys who perform work that benefits all plaintiffs

---

entire committee were kept abreast of the work *as it occurred* and indeed participated in it. Thus, there was no refusal to have a meeting as has been implied, there was just no need, let alone urgent need, to have it in the limited time frame prior to the instant motion to which was needed because resolutions/settlements appear to be happening and establishing a holdback to compensate for the common benefit work and reimbursement of common benefit expenses must be done now.

are compensated and that other attorneys cannot free ride." *In Re: Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL 2545 (N.D. Ill 2018), CMO 138, pp. 10-11.  Common benefit holdback percentages vary across MDLs, and while there is no doubt that common benefit work percentages lower than 9% have been deemed appropriate in one or more MDLs, there are also many MDLs where equal to or higher percentages have been deemed appropriate depending on the facts specific to that MDL.  *See In re Invokana (Canagliflozin) Prods. Liab. Litig.*, MDL 2750 (D.N.J. Mar. 21, 2017), Case Management Order No. 6, pp. 11-12 (9% for fees); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, MDL 2592, 2020 U.S. Dist. LEXIS 50440 (E.D.La. Mar. 24, 2020) (12% for fees); *In re NuvaRing Prods. Liab. Litig.*, MDL 1964, 2014 U.S. Dist. LEXIS 175299, *1 (E.D. Mo. Dec. 18, 2014), approving Report & Recommendation at 2014 U.S. Dist. LEXIS 176228 (E.D.Mo. Dec. 16, 2014)(11% for fees); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL 1708, 2008 U.S. Dist. LEXIS 17535 (D. Minn. Mar. 7, 2008) (15% for fees).

In its opposition, Parker Waichman identifies in a chart 10 MDLs in which the common benefit work holdback percentages range from 2% to 15%. However, the chart does not contain MDL specific details, such as the size of those MDLs, that explain why such holdback percentages were reasonable respective to that MDL.  Yet, Parker Waichman's chart reinforces the Plaintiffs' position that there is not an "industry standard" or benchmark that is applicable to all MDLs. Rather, the appropriate holdback percentage is completely dependent on the facts and circumstances of each litigation.

There are many factors that a Court should consider in determining common benefit holdback percentages, such as amount of discovery conducted, the development of experts, the preparation for and conducting of bellwether trials, the work required to bring about settlement,

and the number of cases involved in the MDL.  This concept was articulated by the Court in *In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535, *25:

> Further, the Court does not agree that strictly looking to other cases with similar settlement amounts will result in reaching a reasonable percentage for a particular case. That approach would not take into account the work actually completed for the benefit of the plaintiffs nor would it take into account what is most fair to the plaintiffs in light of the specific circumstances of the particular case in question.

Here, this Court should be guided by the aforementioned factors which support that the proposed 9% common benefit holdback percentage is reasonable based upon the facts and circumstances of this MDL.

Additionally, and as noted above, another factor that the Court should consider is consensus.  Prior to the filing of the present motion and following many extensive discussions, all three Co-Lead Counsel and eight of nine PEC members approved of the relief requested herein.[5] Further, after the filing of the motion, this Court provided ample notice for any firm with a case filed in the MDL to present objections to the holdback percentages sought.  There are more than 100 non-PEC attorneys/law firms who have entered an appearance on behalf of one or more plaintiffs in this MDL, and not one of them has objected to the request.  A super-majority vote by Plaintiff's leadership versus a lone objection is a factor for consideration in approving the requested holdback.

---

[5] These members are: (1) Timothy M. O'Brien of Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr & Mougey, P.A.; (2) Stacy Hauer of Johnson Becker; (3) Caroline F. Bartlett of Carella, Byrne, Cecchi, Olstein, Brody & Agnello; (4)  D. Nicole Guntner of Aylstock, Witkin, Kreis & Overholtz, PLLC; (5) Rachel L. Shkolnik of Napoli Shkolnik, PLLC; (6) Danielle Gold of Weitz & Luxenberg, P.C.; (7) Paola Pearson of Anapol Weiss, and (8) Mark Lanier of Lanier Law Firm, P.C.

**B.**     **The Common Benefit Work Done by Leadership Justifies the Requested Percentage**

The details of the extensive work done by the PSC was set forth in the Plaintiffs' initial motion.  Contrary to what Parker Waichman has stated in its brief, significant general discovery is not left to be completed.  Before the first Bellwether case was adjourned due to potential for resolution, it was, for all intents and purposes, trial ready.  All necessary general discovery had been conducted, general reports on issues of causation and liability had been exchanged among the parties, and internal exhibit lists and deposition designations had been created.  The PSC is prepared to present this trial package to any plaintiff's counsel that requests it.

As a practical matter, all of the above has been shared with the Parker Waichman firm who is a member of the PEC.  The work prepared for the first bellwether trial was discussed at PSC meetings and was and is available to all PSC firms on a PSC share file site.  This includes expert reports, memos on various topics, deposition transcripts, and more.  And Parker Waichman participated in preparing deposition cuts and, more broadly, in the MDL's general and bellwether discovery programs.

Regarding case-specific discovery and trial preparation as to a particular case, Parker Waichman's claim that this is work traditionally completed by the PSC prior to remand is simply inaccurate. Unless a specific case is part of the bellwether discovery/trial process, case facts specific to an individual plaintiff are the responsibility of the attorney representing them.  A PSC can provide guidance with respect to what is learned through general discovery and from the bellwether process and trials, but a PSC, in any litigation, is not traditionally responsible for case specific discovery.  In fact, Case Management Order No. 3 entered by this Court in this MDL specifically states:

> Under no circumstances are Co-Lead counsel, the PEC, or any member of
> the PSC responsible for the filings, discovery, or any other issue or matter

related to an individual plaintiff's case or claim. More specifically, the PSC
is in no way responsible for the attorney-client relationship and the duties
and responsibilities each individual attorney or law firm owe to their clients
in prosecution of their individual case.

As to Parker Waichman's claim regarding there being no common benefit delivered

because there has been no global settlement, this argument is misplaced.  Common benefit work

is about the work product itself, not settlement.  It is about the benefit incurred from that work,

and positioning an MDL in a potential resolution posture, as this case is, is worthy of significant

value.

This MDL Court, as with all MDLs, was created primarily so this Court can address

overlapping issues of common fact, eliminate duplicative discovery, avoid inconsistent rulings on

issues common to all cases, and conserve the resources of the parties, their counsel and the

judiciary.  *In re Elmiron (Pentosan Polysulfate Sodium) Prods. Liab. Litig.*, 513 F.Supp. 3d 1406

(J.P.M.L. Dec. 15, 2020)).  The PSC's common benefit work is tailored towards these goals.  This

is why, in many cases, holdback percentages are determined at the onset of MDLs, before any

common benefit work has taken place.  *See e.g. In re Invokana (Canagliflozin) Prods. Liab. Litig.*,

MDL 2750 (D.N.J. Mar. 21, 2017), Case Management Order No. 6, pp. 11-12 (entered three

months after MDL was created); *In Re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh

Prods. Liab.* Litig., MDL 2846 (S.D.Oh. Dec. 11, 2018), Case Management Order No. 11 (entered

four months after MDL was created).  Thus, contrary to what Parker Waichman argues, significant

common benefit has been conferred, and continues to be conferred, on the litigants of this MDL,

regardless of the fact that there has not yet been a global settlement.

Parker Waichman appears to take issue with the fact that this MDL has only been pending

for two years, implying that this should be a reason for this Court to reduce the percentage.  This

position is unsupported.  Co-Lead Counsel is extremely proud of the extensive amount of work

that was accomplished efficiently and effectively in the two years since this MDL was first created. The extent of the work that was done and the fact that the first Bellwether trial was essentially trial ready before being adjourned for a few months is a testament to the caliber of work and diligence of the PSC.  Further, the fact that the bellwether trial has not yet needed to take place and there is the potential for resolution of that case also points to the success of the PSC's efforts. The Court in *Guidant* recognized similar efforts when it approved a 15% attorneys fees holdback.

> The Court disagrees with the Opposition's devaluation of how quickly this MDL was resolved. An attorney fee award should not penalize counsel for settling at an earlier stage of the litigation. Certain attorneys put in significant effort and many hours with the Court and the Magistrate Judge in order to resolve these cases. Instead of decreasing the value of the common benefit attorneys' work, this instead shows that the common benefit attorneys' work was extremely valuable, especially in light of the advanced age of many of the Plaintiffs encompassed by the global settlement. The common benefit attorneys saved the other attorneys and their clients both money and time through their efforts and the settlement likely will allow many Plaintiffs to see the monetary benefits in their lifetime.

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17535, *42-43

## C.    The Size of the MDL Likewise Justifies a 9% Work Holdback

Parker Waichman's objection fails to consider the number of claims that are part of this MDL when compared to others.  Here, the number of viable claims in this MDL is estimated to be less than 2,000. A higher common benefit percentage is reasonable to allow for the appropriate compensation for the lawyers who advanced this litigation on a rocket docket.  If this was a litigation such as Vioxx, which involved approximately 60,000 claimants, or Xarelto, which involved approximately 25,000 claimants, or Talc, which involves approximately 60,000 claimants, or Yaz/Yasmin, which involved approximately 20,000 claimants, then a lower percentage could arguably be warranted.  But given the relatively small number of claims at issue

and the large amount of common benefit work that has been completed, the proposed fee percentage is reasonable. It would allow for just compensation to the attorneys who committed their time and resources in prosecuting this litigation on behalf of all plaintiffs, not only their own clients.

Parker Waichman's request to lower the percentage runs contrary to the common benefit doctrine because it is essentially asking this Court to inadequately compensate attorneys who worked for the common benefit of all.  The undeniable fact is that a reduction in the proposed common benefit holdback percentage will not benefit this MDL, nor any of the plaintiffs in this MDL; rather if the fee percentage were reduced Parker Waichman would be the one to benefit to the detriment of the PSC.

In summary, and for the reasons set forth herein and in Plaintiffs' initial motion, the attorney time, hours, and effort expended to date fully support that a 9% Common Benefit Work Holdback percentage is reasonable and appropriate under the circumstances.

### III.    CONCLUSION

For the reasons set forth above, Plaintiffs, through Co-Lead Counsel, respectfully request this Court enter an Amended CMO No. 15 establishing a Common Benefit Work Holdback percentage of 11% of any gross recovery award, with 9% of the gross recovery allocated to pay common benefit work and 2% of the gross recovery to be used to reimburse common benefit expenses, and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated:  April 24, 2023

By:  _/s/ Virginia E. Anello_____
Virginia E. Anello
Douglas & London, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
vanello@douglasandlondon.com

Parvin K. Aminolroaya
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
paminolroaya@seegerweiss.com

Paul J. Pennock
Morgan & Morgan, PA
850 3rd Ave, Suite 402
Brooklyn, NY 11232
ppennock@forthepeople.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing was filed with the Clerk of Court using the CM/ECF system this 24th day of April, 2023, thereby giving notice to all counsel of record.

/s/ Virginia E. Anello
Virginia E. Anello (VA-8197)