IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: ELMIRON (PENTOSAN POLYSULFATE SODIUM) PRODUCTS LIABILITY LITIGATION | Case No. 2:20-md-02973 (BRM)(ESK) MDL No. 2973 |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE BRIAN R. MARTINOTTI JUDGE EDWARD S. KIEL |

## [PROPOSED] AMENDED CASE MANAGEMENT ORDER NO. 15
## (ESTABLISHING COMMON BENEFIT FEE AND EXPENSE FUNDS)

**I.     SCOPE OF ORDER**

This Order is entered to provide for the fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation.

**A.     Governing Principles and the Common Benefit Doctrine**

The governing principles are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); refined in, *inter alia*, *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1884); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context, in *inter alia*, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); and *In re MGM Grand Hotel Fire Litigation*, 660 F.Supp. 522, 525-29 (D. Nev. 1987). Common benefit work product includes all work performed for the benefit of all plaintiffs, including pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work that advances this litigation to conclusion.

B.  **Application of this Order**

This Order applies to all cases now pending, as well as to any case later filed in, transferred to, or removed to this Court and treated as part of the coordinated proceeding known as *In re Elmiron (Pentosan Polysulfate) Products Liability Litigation*, MDL 2973 (the "MDL"). This Order further applies to:

> (1) every appointed PSC member and their respective law firm, regardless of whether the plaintiff's attorney signs the "Participation Agreement" attached hereto as Exhibit A;
>
> (2) each attorney who represents a plaintiff with a case now pending in or later filed in, transferred to, or removed to this Court, regardless of whether the plaintiff's attorney signs the "Participation Agreement" attached hereto as Exhibit A, and regardless of whether the attorney also has cases outside the MDL (filed or unfiled) ("the MDL Plaintiffs' Counsel"); and
>
> (3) any attorney who represents plaintiffs with cases filed in state court and who elects to sign the Participation Agreement ("the Participating Non-MDL Plaintiffs' Counsel") (together with the MDL Plaintiffs' Counsel, "Participating Counsel").

C.  **Participation Agreement (Exhibit A)**

Exhibit A, attached hereto and incorporated herein, is a voluntary Participation Agreement between: (1) the Plaintiffs' Steering Committee ("PSC") and other plaintiffs' attorneys who seek to perform common benefit work in connection with the MDL, and (2) plaintiffs' attorneys with cases solely in state court who elect to sign the Participation Agreement and perform common benefit work. The Participation Agreement is a private and cooperative agreement between plaintiffs' attorneys only, and not defendants or defendants' counsel. All plaintiffs' attorneys who currently have cases pending in any state court and who want to become a Participating Counsel shall, within 60 days of this Order, execute the Participation Agreement, which shall be provided to any known State Court Counsel by Plaintiffs' Liaison Counsel.  Any plaintiffs' attorney who

does not yet have an Elmiron case filed in any federal or state court and who wants to become a Participating Counsel may also execute the Participation Agreement. Any plaintiffs' attorneys who, in the future, only have cases pending in any state court and who want to become a Participating Counsel shall be permitted (and encouraged) to execute the Participation Agreement.

The Court recognizes the jurisdictional rights and obligations of the state courts to conduct their state court litigation as they so determine and that the state court litigations may include counsel who are Participating Counsel who have executed Exhibit A, as well as Participating Counsel who are bound by this Order under Section I.B.1, I.B.2, or I.B.3. The Participation Agreement and this Order shall not be cited by a Party to the Participation Agreement in any other court in support of a position that adversely impacts the jurisdictional rights and obligations of the state courts and state court Participating Counsel.

## II. TIMING OF SUBMISSIONS

Time and expense submissions are to be made on the 30th of each month, beginning on August 30, 2021. Each submission should contain all time and expenses incurred during the calendar month prior to the submission date (*i.e.*, the September 30, 2021 submission should include all time and expenses incurred during the month of August 2021), though the first submission should include all time and expenses incurred through July 2021. All time and expense submissions should be accompanied by contemporaneous records and verified by a partner or shareholder in the submitting firm or by a member of the Court-Appointed Elmiron PSC if that person is not a partner or shareholder in the submitting firm. In addition, each firm that makes a common benefit time and/or cost submission for a given month shall also be required to submit a brief summary (no more than 2 or 3 sentences) summarizing the contribution that each time keeper from that law firm made toward the common benefit and advancement of the litigation.

Submissions of time and expense made after the 30th day of the month following the month in which the time or expense were incurred may be rejected. Only time and expense incurred after the entry of CMO No. 3 by this Court appointing Plaintiffs' Leadership on January 22, 2021 shall be submitted and considered for common benefit consideration, except that time and expense incurred before this date by the following may be submitted for consideration: (1) those serving as interim liaison counsel (2) at the direction of interim liaison counsel, (3) those appointed lead counsel on January 22, 2021, or (4) at the direction of those appointed lead counsel, albeit before their formal appointment, may be submitted for consideration.

Moreover, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of this Order (*e.g.*, activities associated with completing the items to comply with CMO No. 15), shall be considered for common benefit reimbursement at the end of the litigation.

All time and expenses submissions shall be made to the following email address: elmiron.time.expense@douglasandlondon.com.

### III.   COMMON BENEFIT EXPENSES

#### A.   Qualified Expenses Eligible for Reimbursement

In order to be eligible for reimbursement of common benefit expenses, an expense must meet the requirements of this section and the limitations set forth in the Participation Agreement. Specifically, an expense must be: (a) for the common benefit; (b) appropriately authorized (as defined in footnote 1 in the Participation Agreement); (c) timely submitted within the defined limitations set forth in this Order; and (d) verified by a partner or shareholder in the submitting firm or by a member of the Court-Appointed Elmiron PSC, if that person is not a partner or shareholder in the submitting firm.

### B. Shared and Held Common Benefit Expenses

#### 1. Shared Costs

Shared Costs are costs incurred for the common benefit of all plaintiffs. Shared Costs are costs that will be paid out of a separate Elmiron Operating Expense Fund established and administered by Plaintiffs' Co-Lead Counsel and/or its designee and funded by all members of the PSC and others as determined by Plaintiffs' Co-Lead Counsel. All Shared Costs must be approved by no less than a majority of Plaintiffs' Co-Lead Counsel or the entire Plaintiffs' Executive Committee prior to payment. Shared Costs include: (a) certain filing and service costs; (b) deposition, court reporter, and video technician costs for non-case specific depositions; (c) costs necessary for creation of a document depository, the operation and administration of the depository, and any equipment required for the depository; (d) Plaintiffs' Co-Lead Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Liaison Counsel administrative matters (*e.g.*, expenses for equipment, technology, courier services, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.); (e) PSC group administration matters such as PSC or PEC meetings; (f) accountant fees; (g) generic expert witness and consultant fees and expenses; (h) printing, copying, coding, scanning (out of house or extraordinary firm cost); (i) research by outside third party vendors/consultants/ attorneys; (j) translation costs; (k) bank or financial institution charges; (l) certain investigative services, and (m) special master and/or mediator charges.

#### 2. Held Costs

Held Costs are those that will be carried by each Participating Counsel in MDL 2973. Held Costs are those that do not fall into any of the above categories of shared costs, but are incurred for the benefit of all plaintiffs. By way of example, travel costs incurred by a firm for travel to

undertake common benefit work shall be held costs. Held costs can also include unreimbursed, but authorized, shared costs. No specific client-related costs shall be considered as Held Costs, unless the case is determined by Plaintiffs' Co-Lead Counsel to be a "common benefit case," *e.g.*, certain bellwether cases as determined by Plaintiffs' Co-Lead Counsel.

**C.      Authorization and Submission**

The Participation Agreements sets forth the guidelines for authorizing and submitting expenses for the common benefit which shall be followed.

**D.      Expenses Limitations**

      **1.      Travel Limitations**

Except in extraordinary circumstances approved in advance by Plaintiffs' Co-Lead Counsel, all travel reimbursements are subject to the following limitations:

> i. Air Travel: Only the price of a coach seat for a reasonable itinerary will be reimbursed. Business/First Class Airfare will ***not*** be fully reimbursed, except for international flights or domestic flights where the actual in air travel time is 4 hours or more, both of which require prior approval by Plaintiffs Co-Lead Counsel in order to be considered for reimbursement. Use of a private aircraft will not be reimbursed. If Business/First Class Airfare is used on domestic flights then the difference between the Business/First Class Airfare and the coach airfare must be shown on the travel reimbursement form, and only the coach fare will be will be reimbursed.
>
> ii. Hotel: Hotel room charges for the average available room rate of a business hotel, including the Hyatt, Westin, and Marriott hotels, in the city in which the stay occurred will be reimbursed. Luxury hotels will not be fully reimbursed but will be reimbursed at the average available rate of a business hotel.
>
> iii. Meals: Meal expenses must be reasonable.
>
> iv. Cash Expenses: Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

    v. <u>Rental Automobiles</u>: Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available. If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed, unless such larger sized vehicle is needed to accommodate several counsel.

    vi. <u>Mileage</u>: Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm. The maximum allowable rate will be the maximum rate allowed by the IRS (currently 56 cents per mile).

**2.  Non-Travel Limitations**

i. <u>Shipping, Courier, and Delivery Charges</u>: All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

ii. <u>Postage Charges</u>: A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

iii. <u>In-House Photocopy</u>: A contemporaneous photocopy log or other supporting documentation must be maintained and submitted. The maximum copy charge is 15¢ per page.

iv. <u>Computerized Research – Lexis/Westlaw</u>: Claims for Lexis or Westlaw, and other computerized legal research expenses should be in the exact amount charged to or allocated by the firm for these research services.

**E.  Verification**

The forms detailing expenses shall be certified by a partner or shareholder in the submitting firm or by a member of the Court-Appointed Elmiron PSC if that person is not a partner or shareholder in the submitting firm. Attorneys shall keep receipts for all expenses. Credit card receipts are an appropriate form of verification if accompanied by a declaration from counsel that work was performed and paid for the common benefit.

## IV. COMMON BENEFIT WORK

### A. Qualified Common Benefit Work Eligible for Reimbursement

Only Participating Counsel are eligible for reimbursement for time and efforts expended for the common benefit. Participating Counsel shall be eligible for reimbursement for time and efforts expended for common benefit work if said time and efforts are: (a) for the common benefit; (b) appropriately authorized (as described in footnote 1 of the Participation Agreement); (c) timely submitted; and (d) verified by a partner or shareholder in the submitting firm or by a member of the Court-Appointed Elmiron PSC if said member is not a partner or shareholder in the submitting firm.  Common benefit work shall only be performed by employees of the law firm submitting time/expenses and time/expenses by contract attorneys will not be compensated/reimbursed, absent approval by a Plaintiffs' Co-Lead Counsel or by the Plaintiffs' Executive Committee in writing. Not all common benefit hours billed/submitted are equal. There is no guaranty that all of the time submitted by any firm will be compensated and the hourly rate for the work that is compensated is not guaranteed.  Moreover, because all common benefit work is not the same, the hourly rate between tasks and work may vary significantly.  Moreover, if counsel is a member of the Plaintiffs' Steering Committee and fails to timely submit capital contributions as may be requested by Co-Lead Counsel throughout this litigation, such counsel and members of his/her firm shall not be allowed to submit common benefit time or expenses for reimbursement for the period of time and submission of this time or expense my be rejected or significantly reduced  for failure to timely pay capital contributions.

### B. Compensable Common Benefit Work Defined

As the litigation progresses and common benefit work product continues to be generated, Plaintiffs' Co-Lead Counsel and Plaintiffs' Executive Committee may assign Participating

8

Counsel with common benefit work; common benefit work shall include only work specifically assigned. Examples of common benefit work include, but are not limited to, document review and document coding; expert retention and development authorized by Co-Lead Counsel; preparing for and conducting authorized depositions of Defendants, third-party witnesses, and experts. This may also include research on legal issues, work on case management matters, third-party discovery, and other matters. While the work-up of individual cases is not considered common benefit, in the event that a case is selected as part of an approved early trial or bellwether trial process in the MDL the time and expenses in working-up as part of the bellwether process and all pre-trial and trial work for the case (including work performed as part of the approved bellwether process) may be authorized by Co-Lead Counsel and thus be considered for common benefit to the extent it complies with the other provisions of this Order or Participation Agreement.

### C. Authorization and Time Keeping

All time must be authorized and accurately and contemporaneously maintained. Time shall be kept according to these guidelines as set forth in the Participation Agreement. Further, all time shall be submitted on a timely basis in accordance with Section II above.

## V. PLAINTIFFS' LITIGATION FEE AND EXPENSE FUNDS

### A. Establishing the Fee and Expense Funds

At an appropriate time, Plaintiffs' Liaison Counsel will be directed to establish two interest-bearing accounts to receive and disburse funds as provided in this Order (the "Funds"). The first fund shall be designated the "Elmiron Fee Fund" and the second fund shall be designated the "Elmiron Expense Fund." These funds will be held subject to the direction of this Court.

By subsequent Order of this Court, the Court will appoint a qualified certified public accountant or other duly capable and experienced fund administrator to serve as Escrow Agent

("EA")and/or Fund Administrator ("FA") over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent Order shall specify the hourly rates to be charged or fee structure for the EA and/or FA, including any of the EA and/or FA's assistants, who shall be utilized where appropriate to control costs. The EA and/or FA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel or its designee. Upon approval by the Court, the EA and/or FA's bills shall be paid from the Elmiron Expense Fund and shall be considered a shared cost. The Plaintiffs' Co-Lead Counsel or its designee shall provide a copy of this Order to the EA and/or FA.

### B. Payments into the Fee and Expense Funds

#### 1. General Standards

All plaintiffs and their attorneys who are subject to this Order and who agree to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including such compensatory and punitive damages, with respect to Elmiron claims are subject to an assessment of the gross monetary recovery, as provided herein.

#### 2. Gross Monetary Recovery

Gross monetary recovery includes any and all amounts paid to plaintiffs' counsel by Defendants through a settlement or pursuant to a judgment. In measuring the "gross monetary recovery," the parties are to (a) exclude court costs that are to be paid by the defendant; (b) include any payments to be made by the defendant on an intervention asserted by third- parties, such as to physicians, hospitals, or other healthcare providers in subrogation related to treatment of a plaintiff, and any governmental liens or obligations (*e.g.*, Medicare/Medicaid); and (c) include the

10

present value of any fixed and certain payments to be made in the future. The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court, unfiled, or tolled.

### 3. Assessment Amount and Holdback

Each case of a Participating Counsel where a judgment is entered or in which a resolution is reached with a signed settlement agreement shall be assessed for common benefit work and costs as follows: 9% of the gross monetary recovery allocated for common benefit work ("Common Benefit Work Holdback") and 2% of the gross monetary recovery allocated for common benefit expenses ("Common Benefit Cost Holdback").

The Common Benefit Cost Holdback portion shall be allocated to pay and/or reimburse the expenses that have been and/or will be incurred at the direction and written authorization by Co-Lead Counsel for the common benefit of Plaintiffs in MDL 2973.  The Common Benefit Work Holdback shall be allocated to pay and/or reimburse fees for legal services that have been and/or will be provided by attorneys acting at the direction and written authorization by Co-Lead Counsel for the common benefit of Plaintiffs in MDL 2973.

All expenses and legal services shall be at the direction of and written authorization by Co-Lead Counsel in order to be considered for reimbursement from these funds.  The PSC may apply to the Court for an additional common benefit assessment, against all Participating Cases that are pending at the time of such an application, including if additional funds are needed for reimbursement of the expenses that have been and/or will be incurred at the direction of Co-Lead Counsel for the common benefit of Plaintiffs in MDL 2973, which shall be granted upon a showing of good cause.

### 4. Reporting Obligations

Plaintiffs' Co-Lead Counsel or their designee shall provide to Defendants' Liaison Counsel the following two lists on a quarterly basis beginning on June 30, 2021: (a) a list of all lawyers who have filed an Elmiron case that is pending in the MDL ("the MDL Counsel List") which list shall also include all PSC members who are bound by this CMO; and (b) a list of all lawyers who have executed the Participation Agreement, that is Exhibit A hereto, some of whom who may not have an Elmiron case pending in the MDL ("the Participating Counsel List"). These same lists shall be made available to all plaintiffs' counsel with cases in this MDL, as well as any other plaintiffs' counsel who signs the Participation Agreement, upon request. In the event there is a dispute as to whether a case should be on the lists, Plaintiffs' Co-Lead Counsel shall seek to resolve the matter with the particular plaintiff's counsel informally, and if that is unsuccessful, upon motion to the Court.

Within 14 days of receipt of these two lists from Plaintiffs' Co-Lead Counsel or its designees, Defendants' Liaison Counsel shall provide to Plaintiffs' Co-Lead Counsel or its designees a list of all lawyers who appear as counsel of record on a complaint in any Elmiron case in any court in the United States (state or federal) who do not appear on either the MDL Counsel List or the Participating Counsel List.

The parties shall endeavor to provide these lists and reconciliation on a quarterly basis, beginning on June 30, 2021, then September 30, 2021, then December 31, 2021, then March 31, 2022, then June 30, 2022, and so on. By agreement the parties may skip a quarter.

### 5. Defendants' Obligations to Pay Common Benefit Assessments

For cases subject to an assessment (*i.e.*, all plaintiffs subject to this Order under Section I.B.1-3, any case in which the counsel of record also has appeared as a counsel of record in any

case pending in the MDL, or any case for a lawyer without any MDL cases where the PSC has informed Defendants that the plaintiff's lawyer has signed the Participation Agreement, in accordance with the procedure set forth in Section V(B)(4) above, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment. No orders of dismissal of any plaintiff's claim shall be entered unless accompanied by a certificate of the Defendants' counsel that the assessment, if applicable, will be withheld and will be deposited into the Funds. If for any reason the assessment is not or has not been so withheld, the plaintiff and his counsel are jointly responsible for paying the assessment into the Fund promptly.

To preserve the confidentiality of settlement amounts, if any, Defendants may pay any such assessments on an aggregate basis for each quarter. Details of any individual settlement agreement, individual settlement amount, or amounts deposited into escrow by any particular Defendant shall be confidential and shall not be disclosed by the EA and/or FA to anyone, including Plaintiffs' Co-Lead Counsel or its designees, any member of the PSC, any Plaintiff's counsel, or the Court, unless the Court requests that it receive that information, in which case the report shall be provided only to the Court and only *in camera* (*i.e.*, not publicly filed and not available to any counsel). Quarterly statements from the EA and/or FA shall, however, be provided to Plaintiffs' Co-Lead or its designee (and, if the Court so orders, to the Court) showing only the aggregate of the quarterly deposits from all Defendants, disbursements, interest earned, financial institution charges, if any, and current balance.

## VI.    DISTRIBUTIONS

### A.    Court Approval

The amounts deposited into the Elmiron Fee Fund and the Elmiron Expense Fund shall be

available for distribution to Participating Counsel who have performed professional services or incurred expenses for the common benefit. No amounts will be disbursed without review and approval by the Court, or such other mechanism as the Court may require and Order. Specifically, such sums shall be distributed only upon Order of this Court. This Court retains jurisdiction over any common benefit award or distribution.  The PSC and any counsel who execute the Participation Agreement agree that any final decision by this Court regarding common benefits fees and common benefit expenses shall be final, binding, and non-appealable.

### B. Application for Distribution

Each Participating Counsel who does common benefit work has the right to present their claim(s) for compensation and/or reimbursement prior to any distribution approved by this Court. Any Counsel who does not sign the Participation Agreement shall not be eligible to receive common benefit payments for any work performed or expenses incurred.

At the appropriate time, this Court shall appoint a Special Master to review and address any issues relating to this CMO.  At the appropriate time, this Court shall also appoint a Common Benefit Fee Committee to make recommendations to this Court and/or the Special Master for distributions to Participating Counsel who have performed common benefit work and/or incurred common benefit expenses. In the event that there is not unanimous agreement among members of the Common Benefit Fee Committee, each member of the Common Benefit Fee Committee shall only have one vote and each vote shall bear the same weight. A decision about the recommendation to the Court of Common Benefit Fee Committee need only be made by a majority of votes. The Common Benefit Fee Committee shall determine on its own the most fair and efficient manner by which to evaluate all of the time and expense submissions in making its recommendation to this Court and/or the Special Master. This Court will give due consideration to the recommendation of

the Common Benefit Fee Committee.

    IT IS SO ORDERED. Dated this <u>20th</u> day of <u>  July  </u>, 2023.

                                               s/ _____
                                                    Brian R. Martinotti
                                                    United States District Judge